## S02A1038. KING v. THE STATE.
### (569 SE2d 518)

HINES, Justice.

Kelvin King was convicted of malice murder in connection with the fatal shooting of the mother of his children, Carletta Ford-Scruggs. King challenges the conviction on the bases that the evidence was insufficient to sustain the verdict of guilt and that the trial court erred in refusing to grant a mistrial when the State improperly placed King's character into evidence. Finding the challenges to be without merit, we affirm.[1]

---

[1] The murder occurred on March 19, 1998. On September 11, 1998, a Fulton County grand jury indicted King for malice murder, felony murder while in the commission of aggravated assault, aggravated assault, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony. King was tried before a jury April 26-28, 1999, and was found guilty of malice murder, felony murder while in the commission of aggravated assault, and aggravated assault; the charges of possession of a firearm by a convicted felon and possession of a firearm during the commission of a felony were not submitted to the jury, but placed on the dead docket. On April 29, 1999, King was sentenced to life imprisonment for malice murder; the felony murder stood vacated by operation of law and the trial court found the aggravated assault merged for the purpose of sentencing. See

The evidence, which included eyewitness testimony, construed in favor of the verdict, shows that on March 19, 1998, Carletta Ford-Scruggs sustained a fatal gunshot wound to the head. Prior to marrying, Ford-Scruggs was involved in a long-term relationship with Kelvin King, in which the couple had three children. On the evening of March 19, 1998, Ford-Scruggs and her two young daughters were visiting a friend, Knox, when King telephoned the apartment looking for Ford-Scruggs. Shortly thereafter, King arrived at the apartment. The adults sat and talked for awhile about past events and then King and Ford-Scruggs discussed the future of the children and whether Ford-Scruggs could properly care for them. King "started to get mad" and "started talking all crazy and stuff." King raised his voice, and began "cursing, talking about the 'B' word, that he'll shoot [Ford-Scruggs] in the head." King and Ford-Scruggs both stood up, and King pushed Ford-Scruggs. He then pulled a pistol from the front of his pants, and held the pistol to Ford-Scruggs's head, warning her "I will kill you." Moments later he shot her.

King ran from the apartment but later turned himself in to the police, tearfully stating that he "shot his baby's mother" while they were "playing." After executing a waiver of his *Miranda* rights, King confirmed that he shot Ford-Scruggs, but maintained that it was inadvertent, that he and Ford-Scruggs had "always played rough." At trial, King testified that he accidentally shot Ford-Scruggs after he was "poking" the pistol "over her body."

1. The jury, in its role of resolving any conflicts in the evidence and assessing the credibility of witnesses, was authorized to believe the testimony of the eyewitnesses. *DeLoach v. State*, 272 Ga. 890, 891 (1) (536 SE2d 153) (2000). And the evidence was sufficient to authorize a rational trier of fact to find proof beyond a reasonable doubt of King's guilt of the malice murder of Carletta Ford-Scruggs. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. On direct examination, one of the State's eyewitnesses, Knox, was asked about the content of conversation leading up to the fatal shooting, and Knox responded that King "started talking about Carlett and her mama turned him in and just little simple stuff." King contends that such response, intentionally elicited by the State in violation of the trial court's ruling to prohibit evidence of King's criminal history, improperly placed his character in evidence, and

*Malcolm v. State*, 263 Ga. 369 (434 SE2d 479) (1993). Trial counsel filed a motion for new trial on May 17, 1999. On February 21, 2001, new counsel was appointed to represent King on appeal. Appellate counsel filed an amended motion for new trial on August 3, 2001, and the motion for new trial, as amended, was denied on August 22, 2001. A notice of appeal to the Court of Appeals was filed on September 11, 2001, and the Court of Appeals transferred the case to this Court on March 20, 2002. The case was docketed in this Court on March 28, 2002, and the appeal was submitted for decision on May 20, 2002.

accordingly, that the trial court erred in refusing to grant him a mistrial because of it. But the contention is unavailing.

First, the record does not support the claim that the State intentionally elicited evidence of King's criminal past. In fact, quite the contrary. The evidence is that the prosecutor had instructed witness Knox to refrain from any mention of a criminal history. But insofar as the jury could glean King's prior brush with the law from the witness's response, it fails to provide a basis for a mistrial. Knox's testimony was relevant on the question of motive for the killing, that is, to show that King became angry with Ford-Scruggs following a discussion of past events, including how her mother had "turned him in." The State is permitted to present evidence of a defendant's possible motive for committing a crime, and such relevant evidence is not rendered inadmissible because it may incidentally place the defendant's character into evidence. *Allen v. State*, 272 Ga. 513, 515 (4) (530 SE2d 186) (2000).

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 16, 2002.

*John P. Rutkowski*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Marc A. Mallon, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Jill M. Zubler, Assistant Attorney General*, for appellee.